IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON
Plaintiffs,

**CASE NO: 6:11-cv-1325-Orl-31GJK**

v.

DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE, and KEITH KENNEDY, in his official capacity as Dean of Students and Director of Student Disability Services

Defendants.

_________________________________/

**AMENDED COMPLAINT**

COME NOW the Plaintiffs, LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, by and through their undersigned counsel, and file this amended complaint against the Defendants, DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE and KEITH KENNEDY, in his official capacity as both the Dean of Students and the Director of Student Disability Services, and for their causes of action, state the following:

1. The Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331 and1343 for Plaintiff's claims arising under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-65, et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Declaratory Judgment Act, 28 U.S.C. §2201.

2. Defendant, DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE, (hereinafter referred to as DSC) is a post-secondary educational

institution in the Florida College system serving the populations of Flagler and Volusia Counties. The body corporate for DSC is the District Board of Trustees of Daytona State College has the power to sue and be sued pursuant to § 1001.63, Florida Statutes.

3. At all times material herein, DSC operates a place of education and is a degree granting institution.

4. DSC is a public entity under the ADA, Title II, and a recipient of federal financial assistance.

5. Defendant KEITH KENNEDY, in his official capacity as Dean of Students and Director of Student Disability Services, is the person with authority to ensure compliance with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

6. Plaintiff, LAURA KOSCHUK (hereinafter KOSCHUK), is a resident of Volusia County, Florida. She is deaf. Accordingly, she is a qualified individual with disabilities under the Americans with Disabilities Act and the Rehabilitation Act.

7. Plaintiff, SUZANNE BERGMAN (hereinafter BERGMAN), is a resident of Volusia County, Florida. She is deaf. Accordingly, she is a qualified individual with disabilities under the Americans with Disabilities Act and the Rehabilitation Act.

8. Plaintiff, PAIGE ALLISON (hereinafter ALLISON), is a resident of Volusia County, Florida. She is deaf. Accordingly, she is a qualified individual with disabilities under the Americans with Disabilities Act and the Rehabilitation Act.

9. Plaintiffs have retained the Law Offices of Matthew W. Dietz, P.L., and the National

Association of the Deaf, and have agreed to pay a reasonable fee for the services rendered herein.

**FACTS AS TO LAURA KOSCHUK**

10. KOSCHUK wishes to obtain an education from DSC. She is deaf. While KOSCHUK can speak English intelligibly, she receives information visually through American Sign Language (ASL).

11. KOSCHUK first enrolled at DSC for the 2010 Summer Semester as a full time student with 12 credit hours.

12. On May 19, 2010, four weeks prior to the start of the Summer Semester KOSCHUK went to meet with an administrator at the Deland campus of DSC to ensure that she would receive auxiliary aids and services for the Summer Semester.

13. KOSCHUK provided all the paperwork required for qualification as a student with a disability and requested a note-taker and an ASL interpreter in order to be able to receive information presented in her courses.

14. At no time during the Summer Semester did DSC provide either a note-taker or an interpreter.

15. As a result of not receiving any type of auxiliary aid or services during the Summer Semester, KOSCHUK was required to spend extra hours learning the materials on her own outside the classroom.

16. Further, in KOSCHUK's math class, the lessons were taught via video with narrations, and DSC failed to provide closed captioning or transcripts.

17. KOSCHUK asked the head of the Math department about the availability of transcripts and was advised that DSC would not provide transcripts and that KOSCHUK had to do her best.

18. KOSCHUK complained to DSC's Student Disability Services ("SDS") department on the Daytona campus on a frequent basis. She was constantly told by SDS either there just were not any interpreters available this time of year or that they were advertising the need for one.

19. KOSCHUK took twelve credit hours for the Fall 2010 Semester and was provided with a note-taker and an ASL interpreter, and was able to excel and receive good grades.

20. At the end of the Fall 2010 semester, the interpreter was transferred to the DSC's ASL language program and was not permitted to continue as an interpreter.

21. For the Spring 2011 Semester DSC failed to provide KOSCHUK with an interpreter, and she did not receive an effective note taker until the end of the semester.

22. The note takers supplied by DSC for most of the Spring 2011 Semester were not effective or trained.

23. For her CPR class, DSC failed to provide an interpreter. KOSCHUK and other students were positioned on the floor while the professor would walk around and direct them. During most of the class, KOSCHUK could not even see the professor and therefore could not even attempt to read his lips.

24. Oceanography class required the review of documentary films that were not closed captioned and did not have a transcript. Such information was tested on and

KOSCHUK was told by the teacher to do her best.

25. KOSCHUK complained to the Defendant Dean of Students and head of SDS, Keith Kennedy, on several occasions about the lack of auxiliary aids and services. .

26. In February 2011, KOSCHUK had a meeting with Defendant Kennedy and his assistant Carol Foss, and explained to them that she was not given the equal opportunity to perform to the best of her abilities because of the failure of DSC to provide qualified interpreter and notetaker services. She explained about her anxiety over these classes because she did not know what she was missing and the additional work load she had to do to compensate for not having access to information during class. KOSCHUK told them that she wanted access to the information that she would be tested on like every other student. Kennedy advised KOSCHUK that her teachers did not have to provide auxiliary aids and services and that he would not tell the teachers to do so.

27. In May of 2011, The following agreement was approved by both KOSCHUK and DSC:

> Note to Student and Instructor: The information contained in this agreement is confidential and is not disclosed to anyone without the student's written consent. This student is eligible for the accommodation(s) listed below based on their individual documented circumstances. This accommodation(s) complies with Section 504 of the Rehabilitation Act of 1972, as amended and the Americans with Disabilities Act (ADA) of 1990, as amended. The accommodation(s) listed below are for the course and semester listed above and does not exempt this student from established professional standards; course/classroom testing or state testing requirements. By signing this form, the student authorizes the SDS Office staff to request periodic progress reports during the term. Please note that accommodations will not be provided until signed by the student, instructor(s) or Department Chair. Once completed, you are required to bring this form to your SDS Advisor

(Case Manager) for confirmation and filing. This agreement is only valid for the current term listed above. Therefore, if needed, you must submit a request for accommodations for each semester of attendance. If you have any questions about this accommodation(s) agreement, please contact the SDS Advisor listed below.

COLLEGE ACCOMMODATIONS
Interpreter-American Sign Language
Note Taker
Testing in the SDS Center

CLASSROOM ACCOMMODATIONS
Time and One Half on all Exams
Copy of Overheads/Power Point Presentations

Other: Student requires any video assignments to be closed caption or transcript provided. All oral information given in classroom be provided to student in writing. Written exams requiring video or audio interaction can be taken in SDS.

28. DSC had acknowledged KOSCHUK's disability and need for specific auxiliary aids and services, but failed to comply with this agreement at any time.

29. During the Spring 2011 semester, KOSCHUK was asked by DSC if she would accept an ASL 1 student as her interpreter in her classes and KOSCHUK was told by DSC that a certified interpreter was not available for her. An ASL 1 student is not a qualified interpreter and is unable to interpret in an educational setting. KOSCHUK rejected this proposal from DSC and was not provided an alternate accommodation..

30. KOSCHUK enrolled in the Summer I 2011 semester, which began on May 18, 2011, and had no auxiliary aids or services for the start of this semester.

31. KOSCHUK attempted to obtain support from others in campus, such as the student counsel and other members of the campus community.

32. On June 8, 2011, KOSCHUK was brought into the Disability Services office for a meeting with Defendant KENNEDY, and other employees of DSC Disability Services: Rose Jenkins, Lisa Wise and Carol Foss.

33. Notwithstanding their knowledge that KOSCHUCK was deaf, Defendants DSC and Kennedy did not provide an interpreter during this meeting, and refused to comply with KOSCHUCK's request that the communication should be in writing. As such, KOSCHUCK only was able to receive a portion of the communication conveyed to her.

34. Defendant KENNEDY warned KOSCHUCK that he did not appreciate her going to other departments such as the Student Government Association and speaking at their meetings about how she was not receiving auxiliary aids and services.

35. Defendant Kennedy accused KOSCHUCK of lying to the Student Government Association and others about not receiving auxiliary aids and services and her grades at DSC.

36. Defendant KENNEDY accused KOSCHUCK of lying about her being deaf, and he attempted to cover his mouth while speaking to trick KOSCHUK to admit that she could hear. KOSCHUCK had to constantly ask him not to cover his mouth so she could read his lips.

37. Notwithstanding their agreeing to auxiliary aids and services to KOSCHUK in the past, Defendant KENNEDY said that DSC was not under any obligation to provide KOSCHUK with any auxiliary aids or services since DSC did not have any of the required documentation required.

38. In response, KOSCHUK showed Kennedy that the required documentation was in the back of the file which he was holding.

39. Kennedy then told KOSCHUK that the documentation that DSCH had been using for a year was not "proper" and that she needed a new set of documentation

40. Later that day, Kennedy gave KOSCHUK written minutes of the meeting which included the following statements:

> a. We will provide reasonable services when we can. Colleges determine what is a reasonable accommodation and the definition of reasonable services will vary from college to college. There are no 'entitlements' in colleges as there are in public school systems.
>
> b. An accommodation is a guideline between student, SDS, and the instructors as to what the student can use to be successful. Instructors may or may not consider the recommendations appropriate for the class.
>
> c. All students are responsible for their work as there are many options such as PowerPoint, using a Note taker, tape recorder, and adaptive equipment, which are reasonable accommodations. If nothing is provided, that is a reasonable complaint. There is nothing in law that we have to provide a sign language interpreter, only that we provide reasonable accommodation. Until we can obtain an interpreter for a student requesting one, we are providing reasonable accommodations such as the above.
>
> d. Concern v. Complaint: If there is a concern (you want more than is provided for), please see the SDS Advisor who will try to resolve the issue with the Director before it can become a complaint (didn't receive services).

41. Such meeting and statements are knowing misrepresentations of the rights of a person with a disability under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act and were made for the sole purpose of intimidating, threatening, retaliating and interfering with KOSCHUK's exercise or

enjoyment of, or on account of her having exercised or enjoyed her rights under the disability rights statutes. Following this meeting, KOSCHUK was assigned an interpreter for the three weeks remaining of the Summer I semester.

42. As a result of the discrimination and denial of effective and appropriate auxiliary aids and services, KOSCHUK has experienced a loss of educational opportunities, emotional harm, mental and physical pain, and anguish.

43. KOSCHUK would like to matriculate from DSC and obtain her degree with the same range of opportunities to perform her best and to receive the same access to information in order to be able to make the most of her degree as any other student at DSC.

**FACTS AS TO SUZANNE BERGMAN**

44. BERGMAN is a 47-year-old woman who wishes to obtain a degree as a licensed practical nurse to advance her employment potential. She was born deaf and communicates both expressively and receptively in Signed English.

45. BERGMAN began attending classes at DSC in August 2008. From August 2008 to May of 2009, DSC retained interpreters through Easter Seals in Volusia County. In May 2009. DSC advised Bergman that DSC terminated the contract with Easter Seals.

46. In May 2009, BERGMAN was informed that DSC did not have an interpreter and would provide a note taker and “Caption MIC”, a captioning device where the teacher would speak and the speech would go through a voice recognition program. The program would then convert the speech into a captioned text that is visible on a

screen visible to BERGMAN.

47. Such an auxiliary aid or service was not effective for BERGMAN because the discussion in the class could not be transcribed; i.e. such speech was not detectable by the program, and the words of the professor were inaccurate and garbled when the device was used.

48. Throughout the Spring and Summer of 2009, BERGMAN requested that DSC provide an interpreter, and she frequently complained to Defendant KENNEDY.

49. DSC provided an interpreter for only two weeks during the Summer A 2009 Semester.

50. DSC advised Bergman that DSC had discontinued interpreter services because of budgetary reasons.

51. As a result of not being provided any effective auxiliary aids or services, Ms. BERGMAN received poor grades, including two D's. BERGMAN appealed the decision and her appeal was denied. DSC stated, "According to the Colleges records, although SDS did not identify an Interpreter until the middle of the Summer B semester, they did offer Caption Mic and a note taker as an alternate accommodation. You accepted this alternative but later informed SDS that you did not like Caption MIC and declined to use it. Reasonable accommodations were provided and declined. Please feel free to contact us if there is anything further you need to know about this decision. Sincerely Dennis Micare"

52. BERGMAN found a *pro bono* attorney from Legal Advocacy Center of Central Florida to assist her in obtaining an interpreter and for her to be allowed to retake the

53. For the first few weeks of classes in the Fall 2009 semester, BERGMAN did not have an interpreter. Afterwards, DSC provided BERGMAN an interpreter each morning that she had classes. However, within a few weeks, the interpreter constantly fell asleep and ultimately was fired. Ms. Bergman's colleagues in class constantly laughed at this situation.

54. For the rest of the Fall 2009 semester, DSC failed to provide interpreter services to ensure effective communication with Bergman, but she passed the courses by relying solely on studying the course books for significant amounts of additional time.

55. In December 2009, BERGMAN was advised that DSC agreed to ensure that an interpreter was going to be made available in January 2010.

56. During the resolution of the issue involving the failure to get an interpreter during the Fall 2009, Ms. BERGMAN's *pro bono* attorney attempted to ensure that this would not reoccur, especially during Ms. Bergman's clinical assignments. Ms. Owen corresponded with the DSC vice president of enrollment and student development, Thomas Lo Basso, and she stated as follows:

> I also wanted to make sure that Ms. Bergman will be able to have interpreters in any future clinical classes that she has. She has told me that she does not have any this semester but that she will have clinical in upcoming semesters. I know that we talked about it in our meeting, and we all seemed to in agreement that she should be able to have interpreters in clinicals. I want to ensure that there will be no issues in the coming semesters.

Mr. LoBasso's response to this inquiry was, "Regarding future interpreters, the College will make every effort to secure an interpreter for Clinical assignments."

57. In Spring 2010, Bergman took five courses (two online and three in the classroom) and, DSC provided one interpreter for the live courses. When the one assigned interpreter was on planned vacation, no replacement was provided during her absence and the streaming video for the online courses were was not captioned.

58. In the Spring of 2011, BERGMAN began taking clinical classes for her LPN degree. She passed the pre-clinical assessment without the assistance of an interpreter and was permitted to begin a clinical program at DSC.

59. Contrary to the prior assurances, DSC advised BERGMAN that she could not use interpreters for the clinical program because of privacy concerns regarding HIPAA.

60. BERGMAN was advised by a Professor of the DSC nursing program that she did not think that BERGMAN could make it through the program due to communication issues. BERGMAN cried as she had wanted to be an LPN for 25 years.

61. BERGMAN wanted to take additional tutoring, but could not because the interpreter assigned to her by DSC was occupied with other duties during the day, and DCS would not provide her with another interpreter for tutoring..

62. As a result of not receiving any auxiliary aids or services for the required clinical routine procedures for the Licensed Practical Nursing Program, BERGMAN failed this course and will not be able to get her degree.

63. BERGMAN appealed the dismissal from the program, and prevailed on the appeal and was readmitted into DSC to continue her LPN degree.

64. However, even though BERGMAN passed the Spring 2011 assessment to be in the

clinical program, DSC deemed BERGMAN unqualified to enter the Fall 2011 clinical program and refused to allow her to continue on for her LPN degree because of her communication disability.

65. Because of her success in the patient-care setting, BERGMAN requested an interpreter for the pre- and post- clinical meetings with instructor and staff of the hospital. Due to this request, DSC refused to permit BERGMAN to use an interpreter during the assessment.

66. DSC believed that BERGMAN required an interpreter in order to communicate with patients, but instead decided to deem her unqualified for the program.

67. However, she again has been advised that she will not receive an interpreter for her clinical duties, and may not receive student aid because she is forced to retake the course.

68. As a result of DSC's discrimination, BERGMAN has experienced a loss of educational opportunities, professional opportunity, emotional harm and mental and physical pain and anguish.

**FACTS AS TO PAIGE ALLISON**

69. ALLISON is a 46-year-old woman who wishes to take classes to prepare for the General Educational Development ("GED") test. She was born deaf and communicates both expressively and receptively in American Sign Language.

70. ALLISON began attending classes at DSC in the Fall of 2010.

71. ALLISON requested an interpreter from DSC, and DSC agreed that she was entitled for an interpreter for all of her classes.

72. DSC either did not provide an interpreter or provided an employee of DSC was not qualified to interpret in an educational setting.

73. Instead of interpreting to the students, the DSC employee would attempt to write what was happening in class and pass notes to the deaf students in the class.

74. ALLISON complained to DSC about the failure to provide an interpreter to no avail.

75. Further, notwithstanding the fact that DSC had knowledge that ALLISON was deaf and required auxiliary aids and services to understand the classes in which she was taking, DSC failed to provide her with a note taker and provide closed captioning for the videos shown as part of ALLISON's courses.

76. As a result of the discrimination and denial of effective and appropriate auxiliary aids and services, ALLISON has experienced a loss of educational opportunities, emotional harm, mental and physical pain, and anguish.

77. ALLISON would like to obtain her GED from DSC and later become a nurse, with the same range of opportunities to perform her best and to receive the same access to information in order to be able to make the most of her education as any other student at DSC.

**FACTS AS TO DAYTONA STATE COLLEGE**

78. DSC is a recipient of federal financial assistance and is required to comply with Section 504 of the Rehabilitation Act of 1973 and the regulations propounded by the United States Department of Education under the Rehabilitation Act.

79. DSC is a local governmental entity and is required to comply with Title II of the Americans with Disabilities Act (ADA) and regulations propounded by the

United States Department of Justice under the ADA

80. DSC has failed to have an employee designated to coordinate its efforts to comply with and carry out its responsibilities under Section 504 or Title II of the ADA, including any investigation of any complaints communicated to it alleging its noncompliance with Section 504 or Title II of the ADA.

81. DSC has failed to adopt and publish grievance procedures providing for prompt and equitable resolution of complaints under Section 504 of the Rehabilitation Act or the ADA.

82. DSC has signed and filed assurances of compliance with the Department of Education conditioning the receipt of federal financial assistance on continued compliance with Section 504 of the Rehabilitation Act.

83. DSC continues to advertise for interpreters at below market value rates and advertises for interpreters who do not have the required qualifications to serve as qualified interpreters.

84. DSC and DEFENDANT KENNEDY have been advised of the requirements of effective communication and the needs for auxiliary aids and services on several occasions since 2008, if not earlier, but DSC and Defendant Kennedy have consistently disregarded their obligation to provide auxiliary aids and services to ensure effective communication with their deaf students.

85. DSC offers a sign language program where it teaches American Sign Language to hearing students, with professors and assistants that are able to teach ASL, as well as the importance of language to persons in the Deaf community. Despite this

knowledge, DSC disregards the importance of providing interpreters to its own Deaf students.

86. The acts and omissions of DSC are either done with intentional animus, or in deliberate disregard of the protected rights of KOSCHUK and BERGMAN as persons with disabilities.

**COUNT ONE**
**TTITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 – INJUNCTIVE RELIEF – DSC AND KENNEDY**

87. Plaintiffs restate paragraphs one through 86 as if alleged herein.

88. Plaintiffs sue DSC and Defendant KEITH KENNEDY, in his official capacity as Dean of Students and Director of Student Disability Services, based on Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 – 12134).

89. Defendants DSC and KEITH KENNEDY, in his Official Capacity, violated Title II of the ADA, by discriminating against Plaintiffs, KOSCHUK, BERGMAN, and ALLISON, based on their deafness by failing to provide auxiliary aids and services in their classes.

90. Defendants DSC and KENNEDY discriminated against BERGMAN by denying her the opportunity to participate in or benefit from the benefit or services of the Licensed Practical Nurse program of DSC.

91. Defendants DSC and KENNEDY discriminated against BERGMAN and KOSCHUK by failing to afford KOSCHUK, BERGMAN, and ALLISON an

opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

92. Defendants DSC and KENNEDY discriminated against KOSCHUK, BERGMAN, and ALLISON by providing them with an aid, benefit, or service (such as unqualified interpreters or no captioning ) that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to other students similarly situated;

93. Defendants DSC and KENNEDY discriminated against KOSCHUK, BERGMAN, and ALLISON by otherwise limiting them in their enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service from DSC.

WHEREFORE, Plaintiff, LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON request the judgment of the Court against Defendant, DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE and KEITH KENNEDY in his Official Capacity as follows:

A) Find and hold that Plaintiffs, LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON were denied effective communication and were thereby subject to discrimination on the basis of their disability in violation of Title II of the Americans with Disabilities Act.

B) Order that Defendants reinstate SUZANNE BERGMAN into the Licensed Practical Nursing Clinical course and remove any failing grade in that course from her transcript.

C) Order that KENNEDY and DSC designate an individual who is responsible for compliance under the Americans with Disabilities Act;

D) Order that KENNEDY and DSC provide and publish a grievance procedure under Title II of the ADA in the event that disability accommodations are denied in part or whole;

E) Order that KENNEDY and DSC provide interpreters who are qualified for educational interpreting at a college level for students who are deaf and for all programs and services offered by the Defendant;

F) Order that KENNEDY and DSC provide qualified note-takers for persons who receive sign language interpreters.

G) Order that KENNEDY and DSC ensure that all aurally produced materials have identical written components, such as a transcript or closed captioning.

H) Award the plaintiffs their damages, including actual damages, and non-economic damages;

I) Award the Plaintiffs their attorney's fees, including litigation expenses, and the cost of this action; and

J) Grant such other and further relief as this Court deems just and proper.

**COUNT TWO**

**SECTION 504 OF THE REHABILITATION ACT OF 1973 – DAYTONA STATE COLLEGE**

94. Plaintiffs restate paragraphs one through 86 as if alleged herein.

95. LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON are qualified individuals with disabilities under Section 504.

96. Defendant DSC accepts federal loans or subsidies and is a recipient of federal financial assistance directly or through another recipient, including any successor, assignee, or transferee of a recipient.

97. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulation, 34 C.F.R. § 104, et seq., require that no qualified individual with a disability, on the basis of that disability, be excluded from participation in, be denied the benefit of, or otherwise discriminated against in the services, programs, or activities which receive Federal financial assistance.

98. Plaintiffs have been subject to discrimination under the Rehabilitation Act and its implementing regulations as a result of DSC's failure to obtain effective educational auxiliary aids and services for students with impaired sensory, manual, or speaking skills and exclusion from the participation in the Licensed Practical Nursing clinical program.

99. DSC has failed to afford its deaf students, including LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, equal treatment solely on the basis of their disability.

100. DSC has failed to afford its deaf students, including LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, equal an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

101. DSC has provided its deaf students, including LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, with an aid, benefit, or service that is not as effective as that provided to others;

102. DSC has failed to afford its deaf students, including LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs.

103. DSC has knowledge of its obligations under Section 504 of the Rehabilitation Act and has acted either with intentional animus or in deliberate disregard of their protected federal rights.

104. As a result of the Defendant DSC's actions, the Plaintiffs have suffered actual damages, non-economic damages, embarrassment and humiliation.

WHEREFORE, Plaintiff, LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, request the judgment of the Court against Defendant, DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE as follows:

A) Find and hold that Plaintiffs, LAURA KOSCHUK, SUZANNE BERGMAN, and PAIGE ALLISON, were denied effective communication and were thereby subject to discrimination on the basis of their disability in violation of Section 504 of the Rehabilitation Act.

B) Order that Defendants reinstate SUZANNE BERGMAN into the Licensed Practical Nursing Clinical course and remove any failing grade in that course from her transcript;

C) Order that DSC designate an individual who is responsible for compliance under the Section 504 of the Rehabilitation Act;

D) Order that DSC provide and publish a grievance procedure under Section 504 of the Rehabilitation Act in the event that disability accommodations are denied in part or whole;

E) Order that DSC provide interpreters who are qualified for educational interpreting at a college level for students who are deaf for all programs and services offered by the Defendant;

F) Order that DSC provide qualified note-takers for persons who receive sign language interpreters;

G) Order that DSC ensure that all aurally produced materials have identical written components, such as a transcript or closed captioning;

H) Award the plaintiffs their damages, including actual damages, and non-economic damages;

I) Award the Plaintiffs their attorney's fees, including litigation expenses, and the cost of this action; and

J) Grant such other and further relief as this Court deems just and proper.

**COUNT THREE**
**RETALIATION UNDER TITLE II OF THE AMERICANS WITH DISABILTIES ACT – DSC AND KENNEDY – AND SECTION 504 OF THE REHABILITATION ACT – DSC**

105. Plaintiffs restate paragraphs one through 86 as if alleged herein.

106. Retaliation for asserting rights under the law is a violation of the ADA and Section 504. 28 C.F.R. § 35.134;

107. The meeting between Plaintiff KOSCHUK and Defendant KENNEDY and employees and agents of DSC on June 8, 2011, were intentional and knowing misrepresentations of the rights of a person with a disability under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act and were made for the sole purpose of retaliating against, intimidating, threatening, and interfere with Ms. KOSCHUK's because of her exercise or enjoyment of, or on account of her having exercised or enjoyed her rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

108. The retaliatory requirement for Ms. KOSCHUK to provide additional documentation when DSC and KENNEDY had actual knowledge that KOSCHUK was deaf and had previously given auxiliary aids and services is further an unlawful eligibility criteria prohibited by 28 C.F.R. § 35.130(8).

109. Further, following the original filing of this action and enforcing her rights herein, BERGMAN was advised that she was unqualified to enter a program in which she had previously qualified without any auxiliary aids or services.

110. Such rejection from the DSC LPN program was retaliation for her enforcing her

rights herein.

111. As a result of the Defendant DSC's actions, the Plaintiff LAURA KOSCHUK and SUZANNE BERGMAN have suffered actual damages, non-economic damages, embarrassment and humiliation.

WHEREFORE, Plaintiff, LAURA KOSCHUK and SUZANNE BERGMAN, requests the judgment of the Court against Defendant, DISTRICT BOARD OF TRUSTEES OF DAYTONA STATE COLLEGE and KEITH KENNEDY in his Official Capacity as follows:

A) Find and hold that Plaintiff, LAURA KOSCHUK and SUZANNE BERGMAN, was retaliated against, and intimidated, threatened, and interfered with, because of Ms. KOSCHUK's and Ms. BERGMAN's exercise or enjoyment of, or on account of her having exercised or enjoyed her rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

B) Order that KENNEDY and agents and employees of DSC attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities;

C) Award the Plaintiff her damages, including actual damages, and non-economic damages;

D) Award the Plaintiff her attorney's fees, including litigation expenses, and the cost of this action; and

E) Grant such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing to: Mark E. Levitt, Esq. and Shannon L. Kelly, Allen, Norton & Blue, P.A., 1477 West Fairbanks Avenue, Suite 100, Winter Park, Florida 32789.

LAW OFFICES OF MATTHEW W. DIETZ, P.L.
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822
F: (305) 442-4181
Email: MatthewDietz@USDisabilityLaw.com
*Attorney for Plaintiffs*

By: s/ Matthew W. Dietz
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905

Marc Charmatz
Debra Patkin
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
(301) 587-1788 (Voice)
(301) 587-1791 (Fax)
marc.charmatz@nad.org
debra.patkin@nad.org
*Pro Hac Vice*